JONATHAN WAIT v. BENNINGTON & RUTLAND R. R. CO.

*Railroad Companies.    Cattle Guards.    Negligence in Maintaining.*

1. In a suit by the owner of an animal injured, for the neglect of the defendant in not maintaining sufficient cattle guards, it is not assignable error to instruct the jury that the duty of maintaining cattle guards is laid upon railroad companies with reference both to the preventing of animals from straying onto the track and the safety of passengers. The force of the duty owed to the owner of animals is not weakened by the statement of an additional duty to passengers.

2. Having properly constructed its cattle guards, a railroad company is only liable for negligence in their maintenance, and whether it has been negligent in not keeping them clear of snow and ice is to be determined by the jury from all the circumstances in the case, *e. g.:* the location of the road, the position and condition of the guard, the number of animals which might reasonably be apprehended to be at large, the prevailing storms, the nature and character of the weather, and all other facts bearing upon the question.

3. In determining the sufficiency of a cattle guard, the question is not, could an animal, under any circumstances, cross it, but rather, will it, under all ordinary circumstances, prevent animals from getting upon the track ?

This was an action on the case for negligence. Plea, the general issue, trial by jury. Verdict for the defendant.

The plaintiff's testimony tended to show that, on the 20th day of February, 1883, he was with his team on a public highway in the town of Shaftsbury, and that his team then became unmanageable and escaped from his control, running to a considerable distance on the highway. When they arrived at a point in said highway, where the railroad of the defendant crosses the same at grade, his team left the highway and passed on to the railroad track of the defendant, going up the same some thirty rods from the point of intersection with the highway, when it was struck and injured by the locomotive of the defendant. In passing from the highway onto the railroad track the horses passed over, as the evidence of the plaintiff tended to show, the cattle-guard at that

point, and the negligence complained of was the insufficiency of this cattle-guard. The plaintiff claimed that the defendant was negligent in two respects ; first, in that the cattle-guard, as originally constructed, was not sufficient for the purpose intended ; second, in that at the date in question it had become filled up with snow and ice to such an extent that practically there was no cattle-guard at all, so that the horses could and did pass over it without impediment.

The testimony of the defendant tended to show that the cattle-guard was not so full of snow and ice as the plaintiff claimed, and that of late years there had been a great falling off in the travel on the highway over this crossing, and that at the time of the accident there was but little travel over it, and that the country near said crossing was quite sparsely settled, and but few animals were kept in the immediate vicinity.

Upon this branch of the case the plaintiff requested the court to charge as follows :

1. That it was the legal duty of the defendant to construct and maintain cattle-guards at the road crossing near where the plaintiff's horses were injured, sufficient to prevent cattle and animals from getting on the defendant's road from the highway there crossing the same, and that the plaintiff's right to recover for the injury to his horses from the neglect of defendant to erect and maintain such cattle-guards, is unaffected by the question whether the defendant is chargeable with any negligence in the management of its train at the time of the injury.

2. That it is not a summer or bare ground duty, that it is a continuing duty from day to day while the cars and engines of the railroad are to run upon such road ; that if the cattle-guard in question, in its construction, was not sufficient, then the liability attaches, if the defendant allowed the cattle-guard to become insufficient after its construction, by being filled up with earth, snow, ice or other material, and that it is immaterial what constituted the insufficiency of the cattle-guard at the time of the injury to the plaintiff's horses unless such insufficiency was so recently occasioned as to leave no reasonable opportunity for repair.

3. That the defendant must use the means prescribed by the statute to keep the plaintiff's team off from the railroad, and if it did not use these means and perform its duty as to maintaining a reasonably sufficient cattle-guard there, the consequences declared by the statute must follow, and the defendant is liable for the damages done to the horses, if the horses got upon the track over the cattle-guard by reason of its being insufficient to ward them off, unless the plaintiff's neglect to exercise ordinary care and prudence contributed to the injury.

4. That the sparseness of population in the vicinity and infrequency of travel over the highway at the road crossing in question, do not take away or lessen the duty of the defendant to erect and maintain cattle-guards at this crossing sufficient to accomplish the purpose declared by the statute, viz.: the preventing cattle and other animals from getting on the railroad.

5. That in respect to the snow and ice being in the cattle-guard, if the guard was made insufficient by the snow and ice recently accumulated, and a reasonable time had elapsed since it had accumulated there, for the removal of the same and the defendant had not removed the same, the defendant is as liable for such insufficiency of said cattle-guard as for its being insufficient in its original construction.

6. That the cattle-guard must be sufficient to ward off cattle and animals from the railroad; that is, reasonably sufficient to ward off such cattle and animals as are rightfully in the highway, not only cattle and animals that are driven, but cattle, horses and animals that are rightfully in the highway, that may have temporarily escaped from their keepers or drivers by accident or otherwise, and such as might reasonably be expected to be rightfully in said highway.

To these requests of the plaintiff the court charged as follows:

"And, first, as to the cattle-guard. As I have already said to you, a duty is imposed upon the defendant by the statute. The statute reads in this wise: 'A railroad corporation shall construct and maintain farm crossings of the road for the use of proprietors of the land adjoining the railroad, and cattle-guards at

all farm and road crossings sufficient to prevent cattle and animals from getting on the railroad.' A railroad corporation shall construct and maintain. The duty is expressed in peremptory terms. Then a subsequent section fixes the liability of the corporation, if it has neglected to do this. I should say, however, that following the section respecting the duty of building cattle-guards is a section providing for the building of fences, and then comes a section that applies to both : 'Until its fences and cattle guards are duly made, the corporation and its agents shall be liable for the damages done by its agents or engines, to cattle, horses or other animals thereon, if occasioned by want of such fences and cattle-guards; after such fences and cattle-guards are made, the corporation shall not be liable for such damages unless negligently or wilfully done.' Now there is the duty and there is the liability. As you have observed, gentlemen, the duty is expressed in absolute terms. The statute does not prescribe how these cattle-guards shall be built. In respect to fences, we have a statute that prescribes how they shall be built, and that they shall be four and one-half feet high, but there is nothing in the statute informing us what shall constitute a cattle-guard, and there is nothing declaring that it shall be a pit under the track, still probably you will have no difficulty in assuming that if we build cattle-guards as provided, they may be built beneath the track, but it is a question for you to say. That is I suppose, as we all understand, a common way of building cattle-guards. Of course there can be no structure built that will impede the operation of the railroad; the railroad must be run, and the statute does not impose a duty upon the defendant to build any kind of a structure that will prevent them from operating it with due care to the passengers that they are to carry over it.

The object of requiring cattle-guards is undoubtedly two-fold. First, to prevent animals from getting upon the track, and thus imperiling the lives of the passengers, and secondly, to protect the public against injury to their animals which may be straying upon the track.

So that in construing the statute, we must keep in mind the purposes and objects of it, when we come to inquire whether the defendant has done its duty fairly within the meaning of this statute. Again it can hardly be assumed that the legislature intended to require of a railroad impossible things. It is true that is a duty that rests upon the railroad at all times of the year, winter as well as summer, but the legislature probably never intended to require of a railroad the duty to keep these cattle-guards clear of snow and ice, when doing so would practically impose a burden upon the road that was incommensurate with its duty both to the public and to its own passengers. I apprehend, gentlemen, that the statute is to be construed very much in the way that the old highway law was construed. That statute imposed the duty upon towns of keeping their roads in good and sufficient repair at all seasons of the year. The language was peremptory, as much so as the language of this statute. Still it is apparent that this was an impossible thing. In our Vermont winters highways for miles are oftentimes blocked up with snow so that the road could not be kept in good repair at any expense within the reach of the town.

Many highways in many towns have to be abandoned from pure necessity; and our courts always said under that statute that it was to have a fair, common sense, practical construction. Although the duty was expressed in peremptory terms, still the town was to use proper diligence to keep them in repair, and if it did all it could fairly and reasonably be called upon to do under the circumstances of the case, it was not guilty of negligence. That was the rule we applied to highways and to a statute that was as peremptory and explicit in its terms as in this case. Now in the case of a cattle-guard, it is claimed that there may be occasions during the winter when it would be morally impossible for a railroad company to clear out all its cattle-guards. It is easy to conceive a great many illustrations of this impossibility. Suppose, if you please, that a road is on the surface, that there is no dump and no practical amount of ditching, then this pit is dug and is dug below the surface of the surrounding

ground, a heavy rain storm comes and that pit is filled up with water and then freezes. Now it is easy to see that if there was a succession of cattle-guards of that character on a long line of railroad that had to be cleared out, that it would take not only a great number of men but would involve vast expense, and the question would present itself, if the railroad didn't incur that expense, would it be guilty of not fairly discharging its duty both to its own passengers and to the public. So in the case of a sudden snow storm. Undoubtedly on this railroad, and on all railroads, there are a great number of cattle-guards, a sudden snow storm fills them, it may be a driving storm that packs them hard, that makes them so hard that the snow has to be taken out with a pick, would you say a fair discharge of its duty would require of the railroad company that they incur the expense of immediately cleaning out these cattle-guards? This is a question that addresses itself to your sound judgment as practical men. They are not to be suffered to omit a diligent discharge of their duty, their duty is an important one, it is an important one for their own protection, it is important to the railroad company, that the opportunities for animals getting upon its track shall be as few as possible. Its own trains are endangered by the presence of animals there. So its duty to itself requires them to discharge this obligation imposed by the statute in a diligent and in a prudent way. It is a duty to the public whose animals may chance to have opportunity to get upon the railroad, which is equally urgent. Now then, gentlemen, having in mind its duty to its own property and to its own passengers, as well as its duty to the public, do you say the defendant did on this occasion, in view of what is shown by the evidence, omit a proper discharge of its duty, to have the cattle-guard at this point sufficient to keep animals from straying upon the track?

Then again, gentlemen, under the old highway law it was always held by the courts, that the duty upon a town to keep its highways in good and sufficient repair, as applied to a great thoroughfare, was quite a different thing from its duty to keep its highways in repair as applied to a remote locality. In other

(18)

words, the demand which is made upon the road is a factor to be applied in determining the amount of diligence that should be required of the town. The streets of Bennington, where there is a vast amount of travel, where there is a great variety of travel and all sorts of vehicles passing, the law would require of the town to have these streets in a better condition than it would a highway in a remote locality where hardly a traveler is seen from one week's end to another. There is no demand upon a remote locality and there is no call for a road so smooth and so free from obstruction as there is in a populous community where travel is very much greater. I think the same principle applies to the case of a cattle-guard on a railroad. If the cattle-guard was in the village of Bennington or in a farming neighborhood where there was a large number of settlers, in other words where the railroad is more exposed to the approach of a greater number of animals than in a remote locality, the duty upon the railroad to clear out the cattle-guards is not so high, not so exacting, in the remote as in the more populous places. This proposition, gentlemen, addresses itself to your practical judgment. Would you as practical men say that there was so much danger, that there was as great danger that the railroad would be exposed to the presence of animals upon its track at the place where this cattle-guard was as it would be in a locality where the population was twenty times as large and the number of animals, perhaps, twenty times as great. If that be so, why, it is very plain that the diligence required of the railroad in the one locality is much less than in the other. This is a question for you, gentlemen. It addresses itself to your sound judgment as men. The statute says that cattle-guards shall be constructed in a way that shall make them sufficient to prevent cattle and animals from getting upon the track. That word "sufficient" does not, I apprehend, require a railroad company to make a cattle-guard that is impossible for an animal to get over. Some animals would jump over a wide pit. A horse that runs hurdle races would jump over a wide pit and other animals would get over a wide pit, and to build a cattle-guard to prevent such ani-

mals from crossing would not be practical, and this word on the whole I think is to be construed so as to have a practical construction. In the ordinary course of things would this cattle-guard be likely to restrain animals? The railroad company in building cattle-guards have a right to take notice of the instinct of self-preservation that all animals have. They are to build their cattle-guards as prudent men under the same circumstances would build them. You have heard the testimony as to the width of this guard and as to its depth and the general mode of its construction. Now, then, take it in the summer season, how do you say did the railroad company in the original construction of this guard make such a structure as men of prudence would be justified in assuming to be sufficient to check the approach of animals? If so, then the guard in its original construction at all events was sufficient, and in measuring this element of sufficiency you are to keep in mind the general duty that the railroad company is under to its own passengers as well as to the public. If cattle get over there on to its track its own passengers' lives are exposed. Now then, did the company in view of the duty it owed to its passengers make a structure at this point that prudent men would have a right to say would be sufficient to check cattle and horses and other animals that would approach its track and turn them away. If you say that is so, if you say that there is no fault on the part of the railroad in respect to the original construction of the guard, then the question arises, was there any fault on the part of the railroad in suffering it to become filled with snow and ice and remain so without being cleared out? I believe it is in testimony from several men that this guard hadn't been cleared out during that winter. This was the 20th of February, when this accident occurred. Now take the evidence in the case, gentlemen, as to the exact condition of things at that point; you have heard the testimony of the plaintiff and his witnesses as to the condition of that guard. They say in substance that it was substantially filled up with ice and snow, that they tracked the horses over the guard, that on the west side the appearances indicated that

one of the horses broke through, but the rest of the tracks as they detail it seem to pass over on the surface without making much impression. The defendant's testimony tends to show that it was not filled up so much, that there was a pit several inches deep, at all events, although there was some snow in it, but that it was several inches deep below the rail.

Now then, before you come to the question of whether the guard was sufficient or otherwise, you must first settle the question of what was its exact condition. If part of the jury think it is one way and part the other, it would make it somewhat difficult to determine the question of whether it was sufficient or not, so that it is important for you to concur in your views as to the exact condition of the guard, and then in looking at it in its exact condition, the question presents itself, was it sufficient? It is plain, gentlemen, that although a sudden storm might choke up the cattle-guards on a long line of railroad so that a jury of fair men would say that a railroad company was not under the necessity of immediately cleaning them all out, although that be true, that does not necessarily establish the rule that they are never to be cleaned out. It depends upon the circumstances. It, depends upon the locality where they are located, and it depends upon the exposure that the track is subject to, whether the railroad is required to clean out its guards in the winter season, under such circumstances or not. In the discharge of this duty the railroad company is bound to take notice of the actual condition of things. It is bound, for instance, to take notice that horses sometimes, without any fault of their drivers, will run away; that cattle without any fault of their drivers will sometimes escape beyond their control. A drover may come along with a drove of cattle and they may wander from the highway. All these things the railroad company is bound in the fair discharge of its duty to take notice of. And when you come to inquire whether they have discharged their duty in the care of this cattle-guard, why, you are to consider it in view of the actual state of things in the respects which I have mentioned. Did they construct a barrier at this point in view of what might

fairly be expected to happen to people using the highway, that was sufficient to restrain animals from getting upon their track? If they did, they are not guilty of negligence, but if they didn't they are guilty of negligence, and so far the plaintiff has made out his right to recover."

To the refusal of the court to charge as requested, and to the charge as given upon the subject of the requests, the plaintiff excepted.

*W. B. Sheldon* and *J. C. Baker*, for the plaintiff.

The statute provides that the defendant shall construct, at crossings, a cattle-guard "sufficient to prevent cattle and animals from getting on the railroad." R. L. s. 3407.

The question is, has the defendant performed its statutory duty, a duty which has reference to the interest of the owner of animals likely to get upon the track, and not to its passengers or employes. The charge was misleading, in that it placed this statute before the jury as one for the benefit of passengers, and submitted whether the defendant had done its duty to that end.

The statute imposed a duty upon the defendant, which it defined in explicit terms. If the defendant did not discharge this statutory duty, it was liable, irrespective of whether that requirement was a reasonable one or not. *McDowell* v. *Railroad*, 37 Barb. 195; *Spinner* v. *Railroad*, 6 Hun. 600; *Antisdel* v. *Railroad*, 26 Wis. 145; *Railroad* v. *Ross*, 37 Ind. 545; *Railroad* v. *Cahill*, 63 Ind. 340; *Railroad* v. *Whitesell*, 68 Ind. 297; *Welty* v. *Railroad*, 4 N. E. Rep. 410; *Railroad* v. *Lull*, 28 Mich. 510; 3 Wood Ry. Law, 1557; *Hance* v. *Railroad Co.*, 26 N. Y. 428; *Railroad Co.* v. *Reid*, 28 Ill. 144; *Dunnigan* v. *Railroad*, 18 Wis. 28.

*Batchelder & Bates* and *H. A. Harman*, for the defendant.

The law requiring the construction of cattle-guards should be so construed as to effectuate the intention of the Legislature, but not to require an impossibility. It must be construed in the light of the facts as they existed when the law was enacted, and as they

still exist.   47 N. Y. 230 ; *Ryegate* v. *Wardsboro*, 30 Vt. 746 ;
*Farnsworth* v. *Goodhue*, 48 Vt. 209 ; *Antisdel* v. *R. R.*, 26
Wis. 145.

The question under what circumstances it would be negligence
for a railroad company to allow its cattle-guards to remain filled
with snow and ice is for the jury, under proper instructions from
the court.   What might be negligence in one case would not be
in another.   *Hance* v. *C. & S. R. R. Co.*, 26 N. Y. 428 ; *Blair*
v. *R. R. Co.*, 57 Am, Dec. 36.

What was required of the defendant was a diligence reason-
able in view of all the circumstances.   75 Mo. 668 ; 73 Mo. 576 ;
78 Mo. 291 ; *Murray* v. *R. R.*, 3 Abbott's N. Y. App. 340 ;
*Varco* v. *R. R.*, 30 Minn. 21 ; *Case* v. *R. R. Co.*, 13 Am. &
Eng. Ry. Ca. 564 ; *Clardy* v. *R. R.*, 7 Am. & Eng. Ry. Ca.
555 ; *Rutledge* v. *R. R.*, 19 Am. & Eng. Ry. Ca. 669 ; *Caysor*
v. *Taylor*, 10 Gray 274 ; *Blais* v. *R. R.*, 57 Am. Dec. 36 ;
Sher. & Red. Neg., s. 202, 23 ; 34 Minn. 57.

The opinion of the court was delivered by

TAFT, J.   The questions in this case arise upon the charge ;
the objections made to it are, first, that it " was misleading, as it
placed the statute before the jury as a means for the protection
of passengers, and submittted it to the jury to say whether the
defendant had fairly done its duty to that end and purpose."
The court told the jury that the object of requiring cattle-guards
was undoubtedly two-fold, the safety of passengers and the safety
of animals straying upon the track, and that these objects must
be borne in mind when inquiring whether the defendant had
done its duty within the meaning of the statute.   We think the
purposes and objects of the statute were fairly and fully explained
by the court.   The safety of passengers and the safety of ani-
mals upon the track, were questions so intimately connected that
they could not well have been divorced, for the danger to the
former arose directly from the injury to the latter ; the cattle-
guard was the means of preventing both, and it was not error to
place before the jury the statute in respect to both ; but admit-

ting it was error, the plaintiff could not have been injured by the instruction that the defendant must not only have performed its duty in respect to preventing animals straying upon its track, but, in addition to that, must also have fulfilled its duty in regard to its passengers. The jury could not have understood from the charge that if the company performed its duty in respect to passengers, it was relieved from that in regard to animals getting upon the track. It seems to us that not only was the plaintiff not injured by the charge, but benefited, by having the burden cast upon the defendant of showing that it had fulfilled its duty in both respects. The charge of the court required the defendant to satisfy the jury that it had performed its whole duty in maintaining its cattle-guards, in respect of its passengers, as well as animals getting upon its track, and if that part of the charge relating to passengers could have been omitted without error, its being given benefited rather than injured the plaintiff for the reason above stated. Second, that it was error to say to the jury that " the Legislature probably never intended to require of a railroad the duty to keep these cattle-guards clear of snow and ice when doing so would practically impose a burden upon the road that was incommensurate with its duty both to the public and its own passengers." This is a single extract taken from a full and, as we think, comprehensive charge upon the duty of a railroad company to comply with the statute, and must be considered in connection with the rest of the charge. The court told the jury that the company must keep its cattle-guards sufficient in winter as well as summer, and likened its duty to that of towns, under our former highway law, when they were obliged to keep the highways in good and sufficient repair at all seasons of the year ; it referred to roads being liable to blockade by snow and to such sudden rain and snow storms accompanied by freezing, as would render it impossible for a company to clear out all its cattle-guards at once, but that under all circumstances it must discharge this obligation imposed by the statute, in a diligent and prudent way : this is the exact measure of its duty after cattle-guards are once constructed ; for

Wait *v.* Railroad Company.

then a company is liable only for its negligent and wilful acts. If it was diligent and prudent it necessarily follows that it was not negligent, and therefore not liable under the statute. The test of a railroad company's liability is not whether the guards are " clear of snow and ice," but whether, in their maintenance, the company is negligent, and this must be determined by the jury under all the circumstances in the case, *e. g.*, the location of the road, the position and condition of the guard, the number of animals which might reasonably be apprehended to be at large, the prevailing storms, the nature and character of the weather, and all other facts bearing upon the question. The remarks of the Judge, in connection with the rest of the charge, were not error. Third, that the charge " makes the discretion, convenience and necessities of the managers of railroads, and not the statute, the test of legal duty." We do not take this view of the charge. The defendant was held strictly to the duty imposed upon it by the statute, to maintain cattle-guards sufficient to prevent cattle and animals from getting on the roadbed. The statute must have a reasonable construction ; it cannot mean that a guard must be so built that under no circumstances could an animal cross it, but under all ordinary circumstances is it sufficient to prevent cattle and other animals from getting upon the track. A wild bull or a pair of frightened, runaway horses might cross a guard conceded by all to be sufficient under the statute. We find nothing in the charge to indicate that the court made the discretion, convenience or necessities of the defendant, instead of the statute, the test of legal duty. The cause was properly submitted.

*Judgment affirmed.*

Royce, Ch. J., and Veazey, J., did not sit, being absent.