INTERNATIONAL & GREAT NORTHERN RAILWAY
COMPANY v. W. F. SEARIGHT.

No. 1001.

1. **Tenant's Right to Recover for Grass Burned.**—A tenant occupying land under a verbal contract for a term of more than one year may recover damages for burning grass upon the land against a railway whose track passes through the land.

2. **Value—Opinion.**—There being no market value for the grass, it was competent to permit witnesses to give their opinions as to the value of the grass for feeding in connection with cotton seed, such being the use for which the land was leased. The witnesses were familiar with the subject from personal knowledge of the facts involved.

3. **Rental Paid Incompetent.**—It was not error to exclude testimony to the amount of rent the plaintiff paid for the land. The fact was immaterial upon the issue of the real value of the grass destroyed.

4. **Negligence in Permitting Escape of Fire.**—Upon proof that the fire destroying the grass escaped from defendant's engines, the defendant was liable, unless it showed that the fire was not caused by negligence.

5. **Damages for Grass Destroyed.**—It was correctly charged, that the measure of damages would be "the reasonable value of such grass, at the time and place where the same was destroyed, for the use that plaintiff was then making of it," and interest.

6. **Fencing Railway Track Crossings.**—We think, where a railroad is fenced, in order to exempt the railway company from liability for injury to cattle by the trains, except in case of negligence, it should provide some obstruction so that cattle can not pass freely along on the right of way inside the fence from the crossings which are required. Without some contrivance to prevent cattle from passing from a crossing along the track or right of way, the road would not be fenced within the meaning of the statute. See example.

APPEAL from Williamson. Tried below before Hon. F. G. MORRIS.

*Fisher & Townes*, for appellant.—1. The court erred in permitting the plaintiff to maintain this suit after he had developed in his examination that he was holding the land on which the grass was burned under a verbal lease to extend beyond one year, and that the title to the land was in dispute.

2. The court erred in permitting the plaintiff, and the witnesses Blanton and Highsmith, sworn for plaintiff, over the objections of defendant, seasonably interposed, to give their opinion or judgment as to the value per acre of the crop of growing grass for feeding in connection with cotton seed. Railway v. Maddox, 75 Texas, 305; Railway v. Hepner, 83 Texas, 136; Railway v. Klaus, 64 Texas, 294; Rogers' Expert Testimony, secs. 3, 148.

3. The testimony offered by plaintiff failed to disclose that grass land for grazing, pasturage, or feeding purposes had in the vicinity of plaintiff's pasture a market value, or that it had a rental value per acre per annum; and plaintiff having testified that he had rented this pasture for a certain sum of money per annum, and the witness Blanton having testified that he had rented a tract of land in that vicinity for grazing purposes in connection with his business as a feeder, it was competent for the defendant to prove, as a circumstance tending to prove the value of grass land for grazing and pasturage purposes, what sums the plaintiff and Blanton respectively paid for such land. 2 Suth. on Dam., 375; Abb. Trial Ev., 307; 12 Mich., 18; Railway v. Metz, 2 Ct. App. C. C., secs. 636, 643; Railway v. Cullers, 81 Texas, 382; Railway v. Wallace, 74 Texas, 585; Railway v. Bartlett, 69 Texas, 79; Railway v. Timmerman, 61 Texas, 661.

4. The defendant requested, and the court refused to give, the following special charge: "If, from the evidence, you believe plaintiff entitled to recover for the grass alleged to have been burned by the negligence of the defendant, you are instructed, that his right of re-

covery therefor is limited and restricted to the market value of the grass as it stood on the land at the place where and time when it was destroyed;'' which was error. Railway v. Wallace, 74 Texas, 585; Railway v. Hogsett, 67 Texas, 685; Railway v. Horne, 69 Texas, 643.

*West & Cochran,* for appellee.—1. The appellant, being a stranger to the contract between appellee and the owners of the land, could not question the lease because not in writing. The owners of the land alone could raise such issue. Railway v. Settegast, 79 Texas, 256.

2. The plaintiff, as witness in his own behalf, and his witnesses Blanton and Highsmith, had ample opportunity to form correct opinions as to the value of the grass burned; and showed themselves to be possessed of knowledge of the subject of values. Their testimony, therefore, was admissible and competent to prove the value of the grass burned. Railway v. Maddox, 75 Texas, 305; Railway v. Hogsett, 67 Texas, 687; Railway v. Knapp, 51 Texas, 592.

3. The proof showing that the grass had not a general market value, as testified to by all the witnesses, it was not competent to show what plaintiff paid by way of rental. The defendant could not be made to pay for the grass according to the rate fixed in plaintiff's contract of rental. Nor could he limit its liability to the rental paid.

4. If it was shown that the fires which burned plaintiff's grass were set from defendant's train, the burden was on the defendant to show that its engines were properly equipped and operated. The defendant having failed to offer any testimony on this point, the charge of the court was correct and in strict accord with the approved precedents in such state of case, and as defendant's special charge did not state the law correctly, the court did not err in refusing it. Railway v. Timmerman, 61 Texas, 660; Railway v. Hogsett, 67 Texas, 685; Railway v. Benson, 69 Texas, 407; Railway v. Horne, 69 Texas, 643; Railway v. Wallace, 74 Texas, 561.

COLLARD, ASSOCIATE JUSTICE.—Suit by the appellee against the appellant railway company for damages on account of burning grass on land near Hutto, held by lease alleged to entitle him to use of the same for pasturage from March, 1891, to June 1, 1892, and a conditional right thereafter for one year. Damages are claimed for burning grass, alleged to accrue as follows:

September 25, 1891, 95 acres grass, at $4 per acre ...................... $   380 00
October 7, 1891, 280 acres grass, at $4 per acre........................... 1,120 00
October 18, 1891, 100 acres grass, at $4 per acre........................... 400 00
                                                                                        $1,900 00

Damages are also claimed for killing certain cattle and one horse, estimated to be worth $76.

Verdict and judgment for plaintiff for $1000 for grass burned, and $76 for cattle killed.

Plaintiff was occupying the land under a verbal lease from Judge Cochran, representing the Talbot heirs, and from Doc. Sauls, claimant, the title being in litigation between them, the lease running from March, 1891, until June, 1892, and indefinitely thereafter, until the litigation should be determined by the Supreme Court of the State. The agreement was that Judge Cochran should draft a lease, but it was not done. The land so leased was about 900 acres, for a certain amount per acre per year, rent to be paid upon final decision of the court in the litigation.

Plaintiff was a cattle dealer and feeder, and at the time of the burns had over 100 head of cattle and some horses in the pasture. The land was heavily coated with tall grass at the time of the burns, which occurred as alleged and destroyed grass as alleged. The grass was valuable, especially to a feeder—as plaintiff was—to feed to cattle with cotton seed and other provender. The land was inclosed in a pasture, and defendant's road ran through it. The railroad was fenced through the pasture except at a private crossing, near which the cattle and horse were killed, near the track. They were evidently killed by passing trains.

The testimony does not show that there was any cattle guard or anything to prevent stock from going on the right of way inside the fence at the crossing. The evidence shows that the stock were killed as alleged, and were worth the amount found by the jury, but there is no testimony showing the circumstances of the killing or how it was done, or bearing on the question of negligence, except that the place where the horse and cattle were found dead was open, and stock could be seen along the road for a mile or more in each direction towards the crossing.

There was no market value for the grass destroyed, but the real value for feed as designed by plaintiff was sufficient to warrant the verdict.

*Opinion.*—Appellant's first assignment of error is, that appellee could not recover for the value of the grass destroyed, because he was occupying the land under a verbal contract for a term of more than one year. We think the appellant can not complain. It was a stranger to the contract, and it has been held in this State that as such it could not set up such a defense. Railway v. Settegast, 79 Texas, 257.

Appellant contends, that the court erred in permitting plaintiff and the witnesses Blanton and Highsmith, over objections, to give their opinions as to the value of the grass for feeding in connection with cotton seed. It was in proof that there was no market value for the grass.

Blanton testified, that he was a stockraiser and farmer; knew plaintiff's pasture in October, 1891. "It was covered with a coat of fine grass, thick and tall. Grass in that vicinity had a value for grazing and feeding. Grass is used for feeding along with cotton seed, and is used for roughness. Searight's grass was as good as there was in the country; the pasture had not been pastured or grazed over for a year

or two. Don't know the market value of grass for grazing and feeding in that vicinity; don't know that it had a market value in the vicinity of Hutto, in October, 1891. I have lived in Hutto since 1879, and have owned a farm near there for a number of years before I moved to town, and now own it, and think I would know its market value if it had any. I don't know the rental value per acre per annum for grazing purposes; know of only one instance where land has been rented by the acre for grazing. I am a beef feeder, and have been for a number of years, having fed on my place near Hutto, and think I know the value of grass for feeding. I think such grass as that for such purpose would be worth $2 per acre if used in the winter for feeding in connection with cotton seed."

Highsmith testified, that he was a stockraiser; that he knew plaintiff's pasture in October, 1891; that it had not been pastured for several years, and that it had a fine coat of grass on it. "I don't know the market value or rental value of grass for grazing and feeding purposes. I have been living in that community for twenty-five or twenty-six years, and think I would know the market value or rental value, if it had any." He placed the value of the grass at $2.50 or $3 per acre when designed to use in winter in connection with cotton seed.

Plaintiff was a beef feeder; knew the pasture and its value; stated that the grass by the acre had no market value, but placed its value at $4 per acre.

There being no market value, it was competent to establish the intrinsic value of the grass, as was done, and it was proper to do this by the opinion of persons familiar with the subject, derived from personal knowledge of the facts and the thing to be valued. Railway v. Vancil, 2 Texas Civ. App., 427; Railway v. Ruby, 80 Texas, 175; Railway v. Hogsett, 67 Texas, 685; Railway v. Pickens, 3 Willson C. C., sec. 398; Railway v. Maddox & Co., 75 Texas, 305. There was no error in admitting the testimony.

We can not say that the court erred in refusing to allow defendant to ask plaintiff what rental per annum he paid for the grass, nor in refusing to allow defendant's counsel to ask witness Blanton what rental per acre he paid for a tract of grass land adjoining his place rented for grazing purposes. The bill of exception does not show what the evidence of either of the witnesses would have been, and in such case the appellate court will not revise the ruling of the lower court. Railway v. Greenwood, 21 S. W. Rep., 559; Moss v. Cameron, 66 Texas, 412. There is a higher ground upon which we think the testimony was inadmissible. It was immaterial upon the issue of real value of the grass destroyed. Plaintiff may have obtained the use of the premises for a mere nominal consideration—it may be for attention to the land and keeping off intruders. Such evidence would not tend to prove the value of the grass. The parties may have made a good trade or a bad one, and in either event the consideration paid could not affect the rights of plaintiff or defendant. The testimony was not sought to prove

that there was a market value, but to show the value. We think it would not tend to show value.

Appellant assigns as error the refusal of the court to give a special requested instruction, as follows: "To entitle plaintiff to recover in this suit for grass burnt, he must affirmatively show by evidence (1) that at the times and places named in his petition his grass was burnt; (2) that it was fired from sparks or cinders or coals emitted from or dropped by an engine or engines of the defendant; (3) that the fire was suffered to escape and set fire to plaintiff's grass through the negligence or want of ordinary care of the defendant, or its agents, servants, or employes."

There is no proposition under this assignment pointing out the precise question to be considered; but we presume the complaint is, that the court should have instructed the jury that plaintiff could not recover unless they should find that defendant was guilty of negligence in suffering fire to escape from its engines and set fire to the grass. The testimony showed without contradiction that the fire occurred and destroyed plaintiff's grass as alleged, and the court distinctly charged the jury, that if they did not believe that the fire mentioned originated from fire which escaped from defendant's engines, plaintiff could not recover, and they should find for defendant.

The charge of the court upon the subject is as follows: "As to the claim of the plaintiff for damages by reason of the burning of grass, you are instructed, that if you believe from the evidence the fires in question originated from fire which escaped from defendant's engines, you will find for the plaintiff on this branch of the case, for if the fire originated from fire which escaped from defendant's engine or engines, the burden of proof is on the defendant to show that the fire occurred without negligence on the part of the defendant; and the defendant having introduced no evidence to show that, if such fire originated from its engines, it was not guilty of negligence in the premises, you will find that such fires occurred through the negligence of defendant, if you find that it originated from fire which escaped from defendant's engine or engines. If from the evidence you do not believe that any fires mentioned in plaintiff's petition originated from fire which escaped from defendant's engine or engines, then plaintiff is not entitled to recover on account of grass destroyed by such fire or fires."

We think the charge given by the court was the law of the case, and that asked as to negligence by appellant was not the law, and was not applicable.

The testimony showed, that plaintiff's grass was destroyed by fire which escaped from defendant's engines. No attempt was made by defendant to show that the engines in use causing the fires were properly made and equipped, and operated to prevent fire. No issue was raised which would require a charge that the defendant must have been shown to be negligent in permitting fire to escape from its engines and setting fire to plaintiff's grass in order to be responsible for the loss.

In the case of Railway v. Hogsett, supra, the trial court charged the jury: "Railroad companies have the legal right to run steam engines on their roads, but they have no right to scatter sparks along their track in such manner as to cause unnecessary danger to adjoining property along their line of road; and should they do so, and the property of others is thereby injured or destroyed, the company so doing would be guilty of negligence, and liable to the owner of such injured or destroyed property for whatever loss or injury by fire results from said acts; and said railroad employes are bound to employ due care and skill for the prevention of mischief to the property of others from the emission of sparks of fire from their passing engines." The Supreme Court of this State approved this charge, and say that it was in accordance with the law laid down in Railway v. Timmerman, 61 Texas, 660, where it was substantially held, that if the fire be caused from fire escaping from defendant's engines the plaintiff would be entitled to his damages, unless defendant showed that it had exercised necessary care; or in other words, it devolved upon the defendant to show that the fire was not caused by its negligence. This is in accord with the case of Railway v. Cusenberry, 86 Texas, 525.

If the defendant would relieve itself of liability growing out of the fact that the fire was occasioned by sparks from its engine, it must show the facts constituting the avoidance. Prima facie plaintiff's case is made, and negligence is shown by proof that the fire was communicated to plaintiff's property by escape of fire from the engines of defendant, and the court may so charge the jury. Railway v. Benson, 69 Texas, 407; Railway v. Horne, 69 Texas, 643; Railway v. Wallace, 74 Texas, 581. When plaintiff has made such a case, and defendant rebuts it by showing that its engines were the most approved in use, properly equipped with fire-arresters, and skillfully operated, and then plaintiff undertakes to show that it is still liable from additional cause or negligence, such negligence must be shown, and the question of negligence or not must be submitted to the jury.

We think, inasmuch as defendant made no defense of care to meet the case made by plaintiff that the burn was caused by fire escaping from the railroad engines, it was correct to charge the jury as the court did, without submitting to the jury the question of negligence or not on the part of the company. The facts to be affirmatively found created liability, and consequently negligence, and it was not error to so charge. Campbell v. Goodwin, decided at present term of Supreme Court.

It was not error to refuse a charge asked by defendant, to the effect, that if plaintiff was entitled to recover for the grass alleged to have been destroyed, his right to recover would be restricted to the "market value of the grass," etc. This charge, if given, would have been equivalent to directing the jury to find for defendant, or to find merely nominal damages, because there was no evidence of market value. The court's charge upon the subject was correct, informing the jury that

the measure of damages would be "the reasonable value of such grass at the time and place where the same was destroyed for the use that plaintiff was then making of it, or might have made of it, and interest at 6 per cent per annum from the date on which the grass was destroyed."

Defendant asked the court to instruct the jury to the effect, that as the evidence showed without conflict that defendant's road was fenced where the stock were killed, plaintiff could not recover for their value unless the jury should further believe that they were killed through the negligence or want of care of defendant's employes or servants; that the burden of proving such negligence was upon the plaintiff, and that the mere fact, without other evidence, of finding an animal dead or injured near the track, is not sufficient to establish negligence.

The court charged the jury: "It was the duty of the defendant, its agents, and employes, to use reasonable care in operating its trains to avoid injury to animals about its track, and the failure to use reasonable care to avoid such injury would be negligence. If you believe from the evidence that defendant, its agents, or employes killed any of the animals described in plaintiff's petition, and that defendant, its agents, or employes failed to use reasonable care in operating its said trains, and that thereby said animals described in plaintiff's petition, or any of them, were or was killed, you will find for plaintiff the market value of such animal or animals at the time and place where the same were or was killed, and interest," etc.

The court's charge was sufficient, if such a charge was applicable to the facts. Our statute exempts a railroad from liability for injury to stock on its track by trains if the road is fenced, unless the injury results from want of ordinary care. Sayles' Civ. Stats., art. 4245. The statutes also require railroads, having fenced the road, to make openings or crossings through the fence every one and one-half miles outside of farms and inclosures, but to make at least one opening in each separate inclosure. Sayles' Civ. Stats., art. 4170.

We think, where a railroad is fenced, in order to exempt the railroad company from liability for injury to cattle by its trains, except in case of negligence, it should provide some obstruction, so that cattle could not pass freely along onto the right of way inside the fence from the crossing. This could be done by gates or bars at the entrance of the crossing on the right of way, or by suitable cattle guards on each side of the crossing. If this is not required by the law, it would be safer for cattle not to have the road fenced at all. Without some contrivance to prevent cattle from passing from a crossing along the track or right of way, we think the road would not be fenced within the meaning of the statute. The object of the fence is to keep cattle off the track. They must be fenced off. If they can pass onto it at will from the crossings or openings, it is not fenced.

. The evidence in the case at bar does not show that any gates or guards were provided at the crossing where plaintiff's stock were

killed, and hence the statute does not protect the company so as to require proof by plaintiff that they were killed by negligence of the company's employes. It would be liable absolutely under the statute for the injury done. Sayles' Civ. Stats., art. 4245; 7 Am. and Eng. Encyc. of Law, 916, note 1.

We do not think any charge was required as to defendant's negligence in killing the cattle. The only questions for the jury were, were they killed by defendant's passing train, and what was their value?

The testimony amply supports the verdict. We find no error in the judgment of the court below, and it is affirmed.

*Affirmed.*

Delivered November 7, 1894.

KEY, Associate Justice, did not sit in this case.