## MIDLAND VALLEY R. CO. v. BRYANT.

### No. 2448., Opinion Filed April 5, 1913.

#### (131 Pac. 678.)

1. **RAILROADS—Fences—Sufficiency.** Section 1389, Comp. Laws 1909, making it the duty of railroad companies to fence their roads, except at public highways and stations, with a good and lawful fence, contemplates the erection of wing fences and cattle guards at public highway crossings.

2. **SAME—Purpose.** The purpose of the statute is to prevent the intrusion of domestic animals upon the right of way, and this can only be accomplished by wing fences and cattle guards on either side of the crossings, as well as by fencing the sides of the right of way.

3. **SAME—Injury to Stock on Track—Cattle Guards—Evidence.** The only evidence of the condition of certain cattle guards over which it was claimed plaintiff's mules had passed was that said guards were "steel cattle guards"; that they were the most improved and approved pattern in general use by railroads in this country, and were properly put in and in good condition. The evidence further showed that plaintiff's mules, in some way not disclosed, passed over said guards, and on other occasions, the dates of which do not appear, horses and mules had crossed over them (the condition of the guards at the times not being shown). Held, no evidence of negligence, and that the facts were not such as would authorize the jury to infer a neglect on the part of the railroad company to perform a duty imposed by statute.

4. **SAME—Duty of Trainmen.** The duty owing by train operatives to animals trespassing upon a railroad track, fenced as required by statute, is to exercise ordinary care to avoid injury after their presence and peril are discovered.

(Syllabus by Sharp, C.)

*Error from Osage County Court;*
*C. T. Bennett, Judge.*

Action by Charles Amos Bryant against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Edgar A. de Meules* and *Sol H. Kauffman,* for plaintiff in error.

*Grinstead, Mason & Scott,* for defendant in error.

Opinion by SHARP, C. It is urged with great earnestness by counsel for plaintiff in error that the statute of this state, requiring railroads to fence their right of way, does not require the construction of cattle guards at public crossings. Section 1389, Comp. Laws 1909, makes it the duty of every person or corporation owning or operating any railroad in this state to fence its road, except at public highway crossings and station grounds, with a good and lawful fence. A fence is defined to be:

"An inclosure about a field or other place, or about any object; especially, an inclosing structure of wood, iron or other material, intended to prevent intrusion from without or straying from within." (Webster's International Dictionary.)

Public travel and convenience make necessary the exception that the sides of the right of way be not fenced at public highway crossings; but this does not relieve from the duty to inclose by wing fences and cattle guards, or in some other proper manner, the right of way on each side of such public highway crossing that the object of the statute may be accomplished. The statute is one not alone for the benefit of owners of domestic animals, whether confined in adjoining inclosures or at large, but is also intended to furnish a means of reducing to a minimum the danger to both passengers and employees from collisions with trespassing animals, and at the same time to better enable the railroad company to discharge its duty as a common carrier. *Wait v. Bennington & R. Co.,* 61 Vt. 268, 17 Atl. 284; *Yazoo & M. V. R. Co. v. Harrington,* 85 Miss. 366, 37 South. 1016, 3 Ann. Cas. 181. To require the fencing of the sides but not the ends of the right of way would but partially accomplish this purpose, and, where the entry was effected at such ends or crossings, would in many instances increase instead of lessen the dangers sought to be avoided.

As said in Elliott on Railroads (2d. Ed.) sec. 1198:

"The true test, it seems to us, for determining whether a cattle guard should be erected at any particular point is whether the company is bound to fence at that point.'

In *International & G. N. R. Co. v. Searight,* 8 Tex. Civ.

App. 593, 28 S. W. 39, the court in passing upon this question said:

"Without some contrivance to prevent cattle from passing from a crossing along the track or right of way, we think the road would not be 'fenced' within the meaning of the statute. The object of the fence is to keep cattle off the track. They must be fenced off. If they can pass onto it at will from the crossings or openings, it is not fenced."

*Patrie v. Oregon Short-Line R. Co.,* 6 Idaho, 448, 56 Pac. 82; *Toledo, St. L. & K. C. R. Co. v. Franklin,* 53 Ill. App. 632; *Evansville & C. R. Co. v. Barbee,* 74 Ind. 169; *Grand Rapids & I. R. Co. v. Jones,* 81 Ind. 523; *Wabash, St. L. & P. Ry. Co. v. Tretts,* 96 Ind. 450; Elliott on Railroads (2d Ed.) sec. 1198. Again, in Elliott on Railroads, sec. 1199, the author notes:

"The duty rests upon the company to protect its track for the full width of its right of way, and this duty must be discharged by the erection of proper cattle guards and wing fences."

While our statute requiring railroads to fence their right of ways differs slightly from that of many of the states to which our attention has been called, it cannot reasonably be said that there is any distinction in the object of the different statutes or the duty attempted to be imposed.

It is next urged that there is no evidence of defective cattle guards. On the morning following the accident, the plaintiff discovered mule tracks just over the crossing or cattle guards, and testified that his mules entered defendant company's right of way over the cattle guards, although unseen by him. Plaintiff further testified that the guards were "steel cattle guards." He further testified that other horses and mules had crossed over said guards. The general superintendent of the defendant company testified that the cattle guards were the most improved and approved cattle guards in general use on railroads, in this country, were properly installed and in good condition. This was all the testimony touching the character or repair of the cattle guards. The fact that plaintiff's mules entered the right of way through the cattle guards, or that plaintiff had known of mules or horses crossing said guards, even though the time

the other mules and horses crossed said guards, and their condition at the time had been shown (which was not attempted), was not alone sufficient to entitle the plaintiff to recover. The statute requiring railroad companies to fence their roads does not exact that a railroad cattle guard, to be sufficient, must be so constructed and maintained as to interpose an absolutely unsurmountable and impassable barrier against the encroachment of stock, without exception and under all conditions. It cannot be said that a railroad company is an insurer of the efficacy of its cattle guards under every circumstance, such as against frightened or breachy animals. On the contrary, a railroad company has discharged its duty when it installs and keeps in good repair such guards as are of the most improved and approved kind in general use by railroads. *Smead v. Lake S. & M. S. Ry. Co.*, 58 Mich. 201, 24 N. W. 761; *Choctaw & M. R. Co. v. Gosel*, 70 Ark. 431, 68 S. W. 879; *Choctaw & M. R. Co. v. Vosburg et al.*, 71 Ark. 232, 72 S. W. 574; *St. Louis, M. & S. E. R. Co. v. Busick*, 74 Ark. 589, 86 S. W. 676; *Chicago, B. & Q. R. Co. v. Farrelly*, 3 Ill. App. 60; *Barnhart v. Chicago, M. & St. P. Ry. Co.*, 97 Iowa, 654, 66 N. W. 902; *Cole v. Chicago, B. & Q. Ry. Co.*, 47 Mo. App. 624; *Jones v. Chicago, B. & K. C. Ry. Co.*, 59 Mo. App. 137; *Wait v. Bennington & R. R. Co.*, 61 Vt. 268, 17 Atl. 284; Lewis' Sutherland Statutory Construction, sec. 721. The jury, therefore, could not infer the insufficiency of the cattle guard from the fact that the mules had gone over it and other mules and horses at other times had passed over it. Had there been other evidence tending to show the size, length, depth, and manner of construction of the guards, from which the jury could for themselves have determined their sufficiency, the testimony that stock had crossed over them would have been competent as tending to show their insufficiency. *Timins v. Chicago, R. I. & P. Ry. Co.*, 72 Iowa, 94, 33 N. W. 379. But, without some such testimony, the jury could not fairly conclude that the defendant company was negligent in the discharge of its statutory duty. There was wanting

that testimony from which an inference of fact could properly be drawn. *St. Louis & S. F. Ry Co. v. Gosnell,* 23 Okla. 588; 101 Pac. 1126, 22 L. R. A. (N. S.) 892; *T. S. Reed Grocery Co. v. Miller,* 36 Okla. —, 128 Pac. 271. The burden of proof to establish the acts of negligence charged rested upon the plaintiff; the accident itself raising no presumption of negligence.

The testimony of the plaintiff showed that, on the evening in question, he had turned his mules out into a lane leading to an inclosed pasture on the opposite side of the railroad right of way; that the morning following he found one of the mules at his barn badly injured, and the other he afterwards found dead on the railroad right of way. The testimony of Engineer Patton, in charge of the train, is as follows:

"Q. When did you first see the mules? A. As I came round the curve beyond the bridge. Q. Where were the mules when you first saw them? A. At the west end of the bridge. Q. West end? A. Yes, sir. Q. What position were they in? A. Facing the engine. Q. What did you do then. A. Whistled an alarm and stopped. Q. What did the mules do? A. Turned and ran onto the bridge. Q. Did you see the mules when they ran onto the bridge? A. Yes, sir. Q. What did you do then? A. Called the train crew to get them off the bridge. Q. Tell the jury what you did then. A. After four blasts of the whistle, the train crew came over and we proceeded to get the mule off the track, off the end of the bridge; we got him up four or five different times and he would fall back; then, after going a short distance, he finally made a lunge and jumped over the bridge and fell on the right hand side. Q. You there all the time? A. Yes, sir. Q. I will ask you, Mr. Patton, if any of the men there assisted you in trying to get the mule off the bridge besides the crew? No, sir; they did not. Q. How many times did the men get him up? A. Four or five times. Q. What kind of a bridge was it? A. A wooden trestle. Q. How far apart were the ties? A. Something like eight inches, I judge. Q. How long did you and the train crew labor with the mule to get him safely off the bridge? A. Thirty or forty minutes. Q. What did you do after he lunged off? A. Went on with our work."

Plaintiff's testimony concerning the operations of the train on the night of the accident was:

"Q. You know whether or not on the evening of September 11, 1909, there were any trains coming east over the defendant company's line near your place? A. There was. Q. About what time, if you know? A. After 10 o'clock; I don't know exactly. Q. Was there anything that attracted your attention to the train? A. Yes, sir. Q. What was it? A. Whistling of the train. Q. Where was that train, if you know, with reference to the crossing mentioned when you noticed the whistle? A. Near the crossing. Q. You was in bed·at that time? A. I was. Q. What did you do then? A. Jumped up and run out on the porch. Q. Did you see the train? A. I could see the light. Q. Any other whistles? A. There was a little one. Q. How long did the whistling continue? A. I dont know, probably a half a minute, something like that. Q. Was that train going slow or fast at the time you observed it? A. Going at a moderate rate of speed. Q. How many times did that ·engine whistle that night while in the vicinity of your house, if you know? A. Whistled twice, two different intervals, as if it struck something or that something was ahead; and then I think four long whistles. Q. Where was the train the time these four long whistles were given, if you know? A. South of my house and near this trestle. Q. What was the character of the whistles up near your house; what kind? A. Fast, as if whistling at stock."

It is not claimed that the engine struck either of the mules. As we have already seen, the testimony failed to show negligence in either the construction or maintenance of the cattle guards, so that the mules were at the time trespassing upon the railroad company's right of way. In *Atchison, T. & S. F. Ry. Co. v. Davis & Young*, 26 Okla. 359, 109 Pac. 551, it was held that in such cases the only obligation resting upon the railroad company was to exercise ordinary care, in the management of its trains, to prevent injury to the animals, after their presence· and peril were discovered. *Atchison, T. & S. F. Ry. Co. v. Ward*, 32 Okla. 187, 120 Pac. 982; *Missouri, K. & T. Ry. Co. v. Savage*, 32 Okla. 376, 122 Pac. 656; *St. Louis & S. F. R. Co. v. Brown,*

32 Okla. 483, 122 Pac. 136; *St. Louis & S. F. R. Co. v. Little,* 34 Okla. 298, 125 Pac. 459.

We are unable to see, from a careful examination of the evidence, wherein the defendant company was guilty of negligence in the operation of its train. The testimony of Engineer Patton stands unimpeached. In fact, it is in part corroborated by that of the plaintiff himself, and while it is true the plaintiff testified that on the morning following the accident he found mule tracks leading down the right of way from the crossing to the trestle, and which appeared to have been made by running animals, this would not of itself be sufficient, for even though the mules did in fact run down the track ahead of the engine, still, being trespassers there and their presence unseen, their peril was not by the mere fact of their presence known to the operatives in charge of the train. It is not the danger or peril that the animals were in that constitutes the test of liability, but the knowledge of such danger, and the consequent failure to exercise ordinary care to prevent the injury. It was further shown by the testimony of the engineer that the entire train crew of five men attempted to get one of the mules off the wooden trestle on which it had run; that they labored with the animal in trying to get it safely off the bridge for 30 or 40 minutes; that the train crew were provided with lanterns, and were further aided by the light reflected by the electric headlight on the engine; that they got the mule up four or five times, when he would fall back (presumably between the ties,) and then, after going a short distance, the animal finally made a lunge and jumped over the bridge and fell on the right hand side. It appears that the train crew used all reasonable efforts to safely remove the mule from the track. This work was necessarily dangerous, and that they did not succeed in safely performing a difficult feat cannot be held to constitute negligence. There being no evidence of negligence, the court should have instructed the jury to return a verdict for the defendant, and it was error to refuse defendant's request for a peremptory instruction.

MARCH TERM, 1913.—VOL. XXXVII.        213

The judgment of the trial court should therefore be reversed and the cause remanded.

By the Court: It is so ordered.