[Civil No. 3806.   Filed May 24, 1937.]

[68 Pac. (2d) 202.]

V. C. MUSGRAVE, Appellant, v. SOUTHERN PACIFIC COMPANY, a Corporation, and ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellees.

Mr. John W. Ray and Mr. John C. Lee for Appellant.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellees.

LOCKWOOD, J.—This is an appeal by V. C. Musgrave, hereinafter called plaintiff, from a judgment in favor of Arizona Eastern Railroad Company, a corporation, and Southern Pacific Company, a corporation, the latter hereinafter called defendant. The facts and circumstances upon which this appeal is based may be stated as follows:

Plaintiff alleges in his complaint, in substance, that he was the owner of certain horses of an aggregate value of some $1,800, and

"that by reason of the failure of the defendants to maintain cattle guards in the fences inclosing right-of-way upon which said defendants operate their railroads, but in lieu thereof, and where said fences approach said railroad tracks, said defendants maintain a platform or bridge of wood over which live stock could and do pass into and upon said right-of-way, plaintiff's stock, above mentioned, did, against the will and wishes and without fault of the plaintiff, enter in and upon said right-of-way over said platform or bridge so maintained by said defendants about four (4) miles south of the City of Chandler, Maricopa County, State of Arizona; that while said live stock was upon said right-of-way, the said defendants, by their agents and servants, in operating a passenger train, commonly known as No. 12, upon said railroad track and right-of-way above mentioned at about the hour of 2:30 A. M., on the 6th day of September, 1934, at a high and excessive rate of speed, to wit, 65 miles

per hour, and without due care and caution in disregard of their duty with respect to live stock being upon said railroad track, and without applying brakes to said locomotive and cars to prevent the killing of said live stock, so ran and managed said locomotive and cars in such a reckless and negligent manner, as aforesaid, that said locomotive, drawing said cars, ran upon and against said live stock of plaintiff, killed, maimed, and destroyed same to plaintiff's loss and damage in the sum of One Thousand Eight Hundred Dollars ($1,800.00)."

There was a further allegation that the killing was willful, wanton, and malicious, and a plea for exemplary damages in the sum of $500. Defendant answered with a general demurrer and general denial. The demurrer was overruled, and the case was tried before a jury which, after due deliberation, returned a unanimous verdict in favor of the defendant, upon which this appeal was taken.

■ The reporter's transcript was not brought up, and the case comes before us on a stipulation as to the evidence which was presented to the jury. Following our oft-repeated rule, we must construe this evidence as strongly in favor of the verdict of the jury as is reasonably possible, and, thus construed, the ultimate facts may be stated as follows. In the morning of September 6, 1934, defendant's passenger train, called the "Apache," was running on its railroad tracks some distance south of Chandler, at a speed between 55 and 60 miles per hour, when suddenly a band of horses ran out from the dark right of way onto the track, about 150 yards in front of the train. The engineer immediately applied the brakes, and did all that he could to stop the train, with safety to his passengers, but was unable to bring it to a stop until it had struck and killed, or crippled so badly that it was necessary to kill, the horses in question. Near to the place where the horses were killed there was a railroad crossing

at which place there was a wooden structure called by plaintiff a bridge or platform, and by defendant a cattle guard. This structure was described in detail by the division engineer of the defendant, and he testified that it was of standard design, and in common and general use by the defendant and many other railroad companies in the United States, and that experience showed it was the safest and most effective type of cattle guard which could be used. There was also considerable evidence that the plaintiff's livestock, which were killed, were what was commonly called of a "breachy" nature, that is, that they were very difficult to keep confined by ordinarily efficient fences and guards, and that they frequently broke into or out of ordinary inclosures. There was also considerable evidence as to the value of the animals, but, in view of the other facts of the case, this is immaterial.

There are three assignments of error, which read as follows:

"(1) The court erred in the admission of evidence, the plaintiff's horses being breachy; i. e. that they were given to breaching in and over fences of others in the neighborhood, over plaintiff's objection. This is error, in view of the fact that no witness testified that the horses got onto the track by breaking through or over the fence.

"(2) The court erred in its charge to the jury. The particular errors in the charge are two, (a) the court said directly that the jury could not find punitive damages, as there was no element in the case upon which to base punitive damages. (b) That court undertook to state the law of the case as one under the common law of negligence, utterly ignoring the statutes of Arizona as to the duty and penalty for disobedience of that duty to fence, although he did say that there was a presumption of negligence by the proof of the killing by a moving train on the right of way.

"(3) We assign as error the refusal to grant a new trial on the question that the verdict for defendant

was not sustained by the evidence and in the jury denying to plaintiff some compensation or damages for the killing of the stock.''

■ And we consider these assignments in their order. So far as the first one is concerned, since the case comes to us on an agreed statement of the evidence, and there is nothing therein to show that the evidence complained of was not admitted with the full approval and consent of the plaintiff, we cannot consider it. *Worden* v. *Gartin,* 36 Ariz. 92, 283 Pac. 279; section 2, rule V, Rules of the Supreme Court; section 3867, Rev. Code 1928.

■ The second assignment of error is in two parts, the first being that the court erred in instructing the jury that it could not find any punitive damages as there was no element in the case upon which to base such damages. We think this instruction was correct. The action was apparently based upon sections 2142 and 2143, Revised Code of 1928, which read as follows:

''§ 2142. *Railroad crossings for stock; bridge openings; violations; penalty.* A railroad, fencing its line or road, shall leave an opening at least once in every three miles, in an accessible place for stock to pass through, such opening to be at least sixty feet wide, with cattle-guards at each end, and fences run to such guards, place cattle-guards and wing fences on either side of the said openings, sufficient to prevent cattle entering upon the said right of way so enclosed, and leave unfenced any places wherein the railroad runs over any trestles or bridges that are sufficiently high for cattle to go under the same.''

''§ 2143. *Liability for damage to live stock by railroad company.* Whenever live stock is injured or killed by locomotive or cars on the line of any railroad company unfenced by good and sufficient fence or other barrier sufficient to turn live stock, the company shall be liable in damage therefor to the owner of such live stock, unless it be shown that the owner, his agent or servants, immediately contributed to such killing or injury.''

■ Nothing is said in either of these sections as to punitive damages being granted under any circumstances for the violation thereof. And plaintiff, therefore, if he claims punitive damages must necessarily rely upon the common law. Under such law, punitive damages are granted only for willful and wanton negligence, and this was apparently recognized by plaintiff, for in his complaint he alleges facts which, if true, would constitute negligence of that type. The trouble is there was not one scintilla of evidence sustaining these allegations of the complaint. The court, therefore, quite properly instructed the jury that under no circumstances could they grant plaintiff punitive or exemplary damages. But even if this were not true, and it was error to give the instruction, we think it would be harmless, unless there was other error in the case which necessitates the setting aside of the verdict and judgment. The jury, by its verdict, found that defendant was not guilty of even ordinary negligence, and certainly if it was not guilty of ordinary negligence, there could have been none which was willful and wanton.

■ We come then to the principal point relied on by plaintiff, which is subdivision (b) of the second assignment of error. The assignment, standing by itself, is not very intelligible, and we might perhaps refuse to consider it on the ground that it is too indefinite for us to determine just exactly of what the error complained of by plaintiff consists. We think, however, since the question as argued by him in his brief presents a point of some importance, which has never been settled in this state, we will consider the assignment as being sufficient to require a consideration of the argument. Briefly stated, the position of the plaintiff is this. Section 2142, *supra,* requires a railroad company, when placing cattle guards to prevent stock from entering upon its right of way, to cause

them to be "sufficient to prevent cattle entering upon the said right of way so enclosed," and section 2143, *supra,* uses the phrase, "unfenced by good and sufficient fence or other barrier sufficient to turn live stock." It is the contention of plaintiff, in substance, that this makes the railroad company an insurer of the sufficiency of its cattle guards and fences to keep stock off of its right of way, and that, if for any reason stock do get upon the right of way of a railroad which maintains fences and cattle guards, and are injured by passing trains, it is conclusively presumed, as a matter of law, that such fences and cattle guards do not comply with the statute, because necessarily they are not sufficient to exclude the stock. In support of this theory of the law, plaintiff cites the cases of *Payne* v. *Clifford,* 24 Ariz. 489, 211 Pac. 566, 568, and *Minneapolis & St. L. R. Co.* v. *Beckwith,* 129 U.S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585. We have examined both of these cases carefully, and are of the opinion that they do not have any bearing upon the question under consideration. The last case cited merely holds that a statute of the nature of ours, requiring a railroad to protect its right of way and allowing a recovery of double damages under certain circumstances, is constitutional. Nothing whatever is said therein as to the nature of the fence or cattle guard which must be maintained to protect the company from liability. In the Arizona case, suit was brought under paragraph 3779, Revised Statutes of Arizona, 1913 (Civ. Code), which is substantially the same as 2143, *supra.* We said:

"The basis of the action authorized by the statute is negligence, that is, the failure of the railroad company to perform a duty thereby imposed upon it. It cannot be denied that the maintenance of a good and sufficient fence or other barrier is an essential part of the duty thus imposed, and that if a failure to maintain such

a fence or barrier has resulted in a violation of plaintiff's rights, he is entitled to recover damages for injuries proximately resulting therefrom.''

But nowhere therein was the question of what constituted a ''good and sufficient fence'' discussed, nor, indeed, was it necessary, for it appeared affirmatively in that case that the fence maintained by the railroad had been torn down for a distance of about 80 rods, and that the cattle injured originally entered the right of way through that gap. Obviously such a structure was in nowise a ''good and sufficient fence.'' On the other hand, there are many courts which have had the precise question now under consideration before them. One of the earliest is that of *Smead* v. *Lake Shore & M. S. R. Co.*, 58 Mich. 200, 24 N. W. 761, 762. Therein the court said:

''The facts in the case seem to have been substantially conceded, except as to the sufficiency of the cattleguard. We quite agree with Judge PEALER, who tried the cause at the circuit, that 'what kind of a guard should be used is quite a difficult question,' to comply with the statute, and that 'a fair construction of the law does not require the company to construct a guard at its crossing that should keep animals from getting over it under a great degree of excitement,' or in exceptional cases, or under extraordinary circumstances; but it requires the company 'to have such a guard as would turn back such beasts as are generally restrained, under such ordinary circumstances as may occur at such places, or may be reasonably expected to occur there.' Of course the kind of guard which will accomplish this object can only be ascertained by observation and experience, and when the best and most approved is used, designed, and constructed, as the result of the use of such means, and kept in proper place and good repair by the company, it has discharged its whole duty in the premises, and if a loss then occurs to the owner of an unruly or disorderly animal running in the highway, in its crossing or attempting to cross the guard, the loss must be borne by

the owner, and cannot be attributed to any fault of the company. . . .

"The evidence tended to show that the guard in question was the kind best approved now in use; that it is, and has been for many years, in use by the defendant on all its roads; and that it is also used by nearly all the principal railroads in the country; and, after making this proof, the defendant requested the court to charge the jury upon this subject as follows: 'If this cattle-guard was sufficient to reasonably serve the purposes of turning back such beasts as cattle-guards are generally designed to restrain, then the defendant is not liable for not maintaining a better one, and your verdict must be for the defendant. The defendant is not bound to guard against unruly horses or other beasts. [Citing case.] Railroads are only held to the duty of being prudent railroad companies, and to the diligence embraced in good railroad management. The degree of care required in any business must be proportionate to its nature and risks. But the law does not require the business to be conducted upon any unusual basis, though the business be one of great risks, and requiring great care and caution. Railways fulfill their duty if they conduct their road in the manner generally found and believed safe by prudent railway companies. [Citing cases.] The burden of proof is on the plaintiff to prove every fact necessary to entitle him to recover. He must show by preponderance of testimony that this cattle-guard was not sufficient for the purposes for which it was intended and constructed. He must show that it was not sufficient to turn back and restrain such cattle, horses, and other beasts or animals as such structures are designed to restrain. If this cattle-guard was in good repair and condition, and was of the same general construction and efficiency as cattle-guards in general use on railroads, and if such cattle-guards have, by experience, been found sufficient to turn back and restrain cattle, horses, and other animals from getting on the railroad, then this cattle-guard must be deemed to be sufficient under the law, and your verdict must be for defendant.' "

The same rule was set forth in *Cole* v. *Chicago, B. & Q. R. Co.,* 47 Mo. App. 624, in the following language:

"The statute has defined what shall constitute a lawful fence, but it has not, in terms, defined a cattle-guard, further than it shall be sufficient to prevent horses, cattle, mules and other animals from getting on the railroad. The construction of a statute should accord with reason and common sense. It should not be construed so as to require impossible or unreasonable things. It was certainly not the intention of the legislature to require that a railroad cattle-guard, to be sufficient, must be so constructed and maintained as to interpose an absolutely insurmountable and impassable barrier against the encroachment of stock, without exception and under all circumstances. It was certainly not the purpose of the statute to require that the railroad companies of the state should construct and maintain cattle-guards to be, not only sufficient to ordinarily prevent horses, cattle, mules and other animals from getting on their railroad, but sufficient to bar animals that are wild or breachy, or have the habit of fence-jumping, or under fright or excitement. A railroad is certainly not chargeable as an absolute insurer of the efficacy of its guards under every circumstance. This would be absurd. In Vermont the language of the statute is nearly identical with that of this state, in respect to the duty enjoined upon railroads to construct and maintain cattle-guards, and it is there held that the statute must not be so construed as to mean that a guard should be so built that under no circumstances could an animal cross it, but under all ordinary circumstances is sufficient to prevent cattle and other animals from getting on the track (*Wait* v. *Railroad* [61 Vt. 268], 17 Atl. 284) ; and the same rule is recognized in 2 Shearman & Redfield on Negligence, section 424. The question whether a cattle-guard is sufficient or not is one for the jury. 3 Wood on Railways, 1557.''

This rule was again construed in *Miller* v. *Chicago, M. & St. P. R. Co.,* 180 Mo. App. 209, 167 S. W. 1160, 1162, and the following language used:

"The statute did not impose the duty upon defendant of maintaining a cattle-guard that would be an insurmountable barrier to horses under any and all circumstances. It is not intended that a railroad company shall insure its cattle-guards to be stock proof. Regard must be had for the safety of trains as well as for the turning of live stock, and the extent of defendant's duty was to build and maintain a guard that ordinarily would be sufficient to prevent horses from attempting to pass over it into the right of way. [Citing cases.] In the case last cited [*Choctaw & M. R. Co.,* v. *Goset,* 70 Ark. 427, 68 S. W. 879] it is well said by the Supreme Court of Arkansas:

" 'The law does not impose an impossible or impracticable duty upon the company; and when its stock guard is as perfect and as well adapted for the purpose of turning stock as it is practicable to make it, in connection with the safe and prudent operation of the road, that is all the law requires, and the company has discharged its duty under the statute.' "

We could add an indefinite number of cases from various jurisdictions to a similar effect, but we think the reasonableness of the rule laid down is so obvious that it is unnecessary to discuss it at further length. The only evidence in regard to the cattle guard was that it was of the best possible design and construction for the purpose for which it was intended, but, notwithstanding this, the court went so far as to submit the question of the sufficiency of the guard to the jury, under proper instructions as to what constituted a "sufficient" guard, and the issue was resolved against plaintiff. This necessarily disposes of the last assignment of error.

The judgment of the superior court is affirmed.

McALISTER, C. J., and ROSS, J., concur.